Mary B. Burdick  
vs.  
South County Public Service Co.  }No. 1658.

### July 19, 1933.

JOSLIN, J. Heard on motion of the defendant for a new trial after a verdict by the jury in favor of the plaintiff in the sum of $7,583.

The action is brought to recover damages for the alleged wrongful death of Alvah H. Burdick. The plaintiff is the widow and she sues for the benefit of herself and children.

On July 7, 1930, Mr. Burdick lived in a house in the village of Carolina. The defendant was in the business of generating and distributing electric current in the locality. Said current was manufactured at certain stations. By means of primary wires, the current, at a voltage of 4,400, was transmitted to sub-stations, from which point the distribution was made. At convenient places this high voltage was stepped down to 110, which was appropriate for domestic use. By means of secondary wires, this 110 voltage current was transmitted into the Burdick house. Both wires, that is, those carrying the high voltage of 4,400 and those carrying the low voltage of 110, were carried on the same poles, the high voltage wires on top.

Just before the accident there was a rain storm, which in that locality and in that season of the year was not unusual. Mr. Burdick was on the first floor of his home. Hearing some unusual noise he went down into the cellar to investigate. His wife heard a cry and moan and she rushed downstairs. She found him standing with his body lying across the automatic electrically operated water pump, his chest against the switch bar, knees bent, and his right arm thrown over the switch. She touched his shoulder with her finger and received a shock. She rushed out for help. On her return in a few minutes, he was dead. He had been killed by electrocution. There was a burn on his chest and on his foot.

The plaintiff contends that one of the primary wires was broken, one end thereof falling to the ground and the other end crossing or resting upon the secondary wires; that the high voltage passed over these secondary wires into the Burdick house, down into the cellar and into the water pump; that, as some part of Mr. Burdick's body came in contact with some part of the motor, the high electric current passed through his body, as evidenced by the two burns, and he was electrocuted. She contends that the defendant is bound to use suitable and reasonable precautions to prevent the highly dangerous electric current from passing into the Burdick house.

The defendant denies that the primary wire fell onto the secondary wires. It maintains that one end of the primary wire fell to the ground and the other fell across the limb of a tree; that the high voltage never passed into the house; that Mr. Burdick was not killed by the high voltage, but rather by the low voltage coming normally over the secondary wires; that this was possible because of the unusually favorable conditions from an electrical standpoint which it claims existed; and that the accident was unavoidable.

A number of witnesses testified to seeing the primary wire broken immediately after this occurrence. The plaintiff's witnesses, who first saw it,

testified that one end thereof was crossing or hanging over the two secondary wires leading into the house, and the other end lay in the street. The defendant's two witnesses, who arrived at the scene very shortly after the accident, testified that the primary wire did not touch the secondary wires, but hung over the limb of a tree.

The defendant was dealing with and serving to the Burdick home a highly dangerous and deadly agency. Under such circumstances reasonable care required the defendant to employ suitable and reasonable precautions to prevent dangerous currents from passing into the Burdick home.

Each of the parties presented a capable expert in the electrical art. Mr. Towers, for the defendant, premised his theory of the accident upon the fact that the primary wire fell across the limb of a tree and had no contact whatever with the secondary wires. He could advance no explanation of how the accident could have happened without the primary wire hanging over the secondary wires. As the jury found that there was a contact of the two wires, it leaves the defendant with no explanation.

Mr. Puffer, for the plaintiff, a man of profound and extensive electrical knowledge and experience, testified that the only way the accident could possibly have happened was by the high voltage current passing over the secondary wires.

In the opinion of the Court, the jury was amply justified in finding that the primary and secondary wires did contact and that it was the high voltage transmitted over the secondary wires which entered the Burdick house and caused the electrocution.

Each expert took the facts as developed by his side and theorized on how the accident occurred and how it might reasonably have been prevented.

The simple question on this phase of the case that was left to the jury was whether or not the defendant negligently permitted a current of high voltage to pass from its primary wire to its secondary wires and thence into the Burdick home. This involved a consideration of the reasonable sufficiency and adequacy of the apparatus and equipment employed by the defendant. The testimony was conflicting. After a careful review of all the evidence, we are of the opinion that the preponderance on this question favored the plaintiff.

The defendant makes the point that Mr. Burdick was guilty of contributory negligence. There was evidence that the Burdick home was equipped with such equipment and appliances for the reception of low voltage current as were usual under all the circumstances. The jury found no contributory negligence and we approve such finding.

A further ground for the motion now under consideration is that the damages are excessive. Mr. Burdick was 63 years of age; he was active; his habits were good; he had had no illness for at least seven years; and his health was good. His average annual net income from personal earnings over expenses for seven years prior to his death was $1,045. He had a life expectancy of 13 years. His total net income from personal earnings would be $13,585. Reducing this sum to its present value results in a sum about equal to the amount of the verdict. The defendant argues that Mr. Burdick might not have lived for thirteen years, or, if he had lived, there is no certainty that he would have continued to enjoy the same earnings. This is true, but under the authorities, it was the duty of this Court to give the jury the established formula as an aid in the assessment

of damages. The amount of the verdict indicates that the jury intelligently responded to the Court's instruction.

In the opinion of the Court the negligence of the defendant and the due care of the plaintiff's intestate were established by the fair preponderance of the evidence. The amount of the verdict is not excessive. Substantial justice is done and therefore the motion for new trial is denied.

For plaintiff: John P. Beagan.

For defendant: Sherwood & Clifford.